UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLIFFORD L. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:09CV934 CDP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Clifford L. Davis's application for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, *et seq*., and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*.

Davis claims he is disabled because he suffers from multiple heart impairments, depression, and side effects from the medication he is prescribed. Because I conclude that the Administrative Law Judge's decision denying benefits is supported by substantial evidence, I will affirm the decision.

### Procedural History

On March 10, 2006, Davis filed applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Act. Davis

alleges that his disability began on March 3, 2006, when he suffered a heart attack that revealed he suffered from multiple heart issues.

The Social Security Administration initially denied his application on July 11, 2006, and Davis filed a timely request for a hearing by an ALJ. The ALJ issued an opinion upholding the denial of benefits on February 22, 2008. After the ALJ's final decision Davis submitted additional evidence regarding his depression. The Social Security Administration Appeals Council reviewed Davis's record with the additional evidence and denied his request for further review on April 10, 2009.

## Testimony Before the ALJ

At the time of the administrative hearing Davis was forty-five years old, and lived with his wife and son. Davis testified that he had finished the eighth grade,[1] was 5'8" tall and weighed two hundred and ten pounds.

Davis stated that he suffered from numerous heart issues that began when he had a heart attack on March 3, 2006. While hospitalized for this heart attack, Davis was diagnosed with multiple heart ailments and prescribed certain medications. Davis claims that since his heart attack he is tired all the time, has difficulty breathing and has chest and back pain. He also stated that his medication has side effects that cause him to frequent the bathroom and contribute to his

---

[1]In his testimony Davis stated that he did not have a GED, but in his disability report he indicated that he did have a GED.

general tiredness.

At the time of his heart attack Davis believed he had pneumonia, and only after going to the hospital did he discover that he had congestive heart failure. He testified that the doctors inserted a cardiac catheter and balloon pump to help alleviate the strain on his heart from the congestive heart failure. Davis testified that he was being treated by his primary cardiologist Dr. Lewen, and saw him every three to six months. He has also continued to see his primary physician, Dr. Johnson.

Davis claims his ailments are affected by weather, as hot or cold weather can make it more difficult for him to breath and causes him chest pain. Davis also stated that he is unable to handle stress effectively, and any stress causes him chest pain, fatigue and anxiety. Davis claims that even a small amount of stress, a phone call from a family member, can cause him difficulty.

Davis said that during a typical day he does chores, such as cleaning the dishes, cooking, vacuuming and doing the laundry. He testified that although he can do the chores he has to sit down and rest every ten to fifteen minutes if he is standing. He stated that on a good day he could stand forty-five minutes at a time while doing chores.

Davis also usually does the grocery shopping with his wife but they try to

avoid larger stores that will require too much walking, such as Wal-Mart, and he can only unload grocery bags lighter than fifteen pounds. Davis volunteers at his church's food pantry. At the food pantry Davis will hand out food and keep track of everyone who has been given food. Davis also frequently visits his wife and friends while they are at work. If he does stay at home he is generally watching television or on the phone with his friends and family.

Davis has worked a series of different jobs in his life. Davis testified that he was last employed in December of 2005, when he worked for the Huddle House Restaurant as a grill cook for a year and a half. He quit that job for reasons unrelated to his health. Prior to that he worked as a contractor for Southwestern Bell for six and a half years until he suffered a shoulder injury, and before that he had worked as a mechanic.

Davis stated that he cannot return to his prior employment because working over a grill would create too much heat and tension, and working for a cable laying company is too physically demanding for what his body can now do.

## **Medical Records**

On March 3, 2006, Davis went to the hospital believing he was suffering from pneumonia, but treating physicians determined that he had actually had a heart attack. While at the hospital Davis underwent: cardiac catheterization; left

ventriculography; selective coronary arteriography; insertion of intra-aortic balloon pump; attempted percutaneous transluminal coronary intervention of LAD. This revealed severe left ventricular systolic dysfunction and significant coronary artery disease with total occlusion of proximal LAD and total occlusion of distal posterior descending branch of the right coronary artery. On March 8, 2006, an echocardiogram (ECHO) showed both left and right atrial enlargement, left ventricular hypertrophy, left ventricular enlargement, moderate global left ventricular hypokinesis, extensive akinetic anterior wall compatible with ischemia or infarction and mild mitral insufficiency.

About three weeks later Davis again reported to the emergency room, after feeling chest and shoulder pains. His cardiologist, Dr. Mark K. Lewen, stated that he fell into class I in the New York Heart Association classification system and stage B in the American Heart Association classification system. These classifications mean relatively mild heart disease with no or only slight limitations of physical activity.

On April 11, 2006 Davis was hospitalized after complaining of continuous left shoulder pain, which is consistent with angina. The following day a chest PA showed mild cardiomegaly but no evidence of heart failure. A myocardial viability study revealed a large defect in the anterior wall and the apex and

persistent diminished activity in the inferior wall, consistent with his earlier diagnosis. At follow-up visits in May and June Dr. Lewen noted that plaintiff was "doing relatively well" and that his ejection fraction had improved to 25 to 35 percent and that his disease was "clinically stable." Dr. Lewen noted that Davis was depressed because of changes the heart attack had made on his life.

A few months later on July 6, 2006, Davis's primary general physician, Dr. William D. Johnson, completed a Medical Source Statement of Ability to Do Work-Related Activities. In this document Dr. Johnson reported that Davis's ability to lift, stand, push and pull, were all affected by his heart impairments. Dr. Johnson noted that Davis's ability to stand was limited by his heart ailments, but his ability to sit during a workday was not. Dr. Johnson also noted that Davis's ability to tolerate temperature extremes was limited.

In October of 2006 Dr. Lewen again saw Davis and again reported that his heart condition was stable. He noted the continued depression and gave Davis samples of Lexapro. In December of 2006, Dr. Lewen reported that Davis's ejection fraction was between 35-40 percent. Dr. Lewen also noted that Davis is able to exercise and work moderately without chest pain. Dr. Lewen recognized that Davis may have anxiety and depression issues and recommended that he seek a psychiatric evaluation. As he had before, he again told Davis that he should stop

smoking.

In April of 2007, Dr. Lewen confirmed that Davis was prescribed Plavix and suffered from coronary artery disease, status-post myocardial infarction with subsequent significant reduction in left ventricular functions and ischemic cardiomyopathy. Dr. Lewen noted that Davis's symptoms were consistent with New York Heart Association class II-III, and had been compensated by medication. Another ECHO Doppler done in April 2007 revealed that the ejection fraction remained within 30-40 percent range.

On May, 8, 2007, Dr. Johnson authored a letter in which he stated that Davis's current ejection fraction was less than 35 percent and that it was Dr. Johnson's opinion and recommendation that Davis seek disability because he is unable to work full or part time. The following month Davis reported that he was, "in a funk" and frequently tired to Dr. Johnson. Dr. Johnson noted that Davis had heart palpitations, shortness of breath and weakness.

In September of 2007 Dr. Lewen again saw Davis. Dr. Lewis indicated Davis had no symptoms consistent with angina and stated that he Davis's "chest pain is atypical and most likely noncardiac." He indicated that Davis continued to smoke and also took nitrogylcerin for the chest pains even though Dr. Lewen had told him not to.

In March and April of 2008, following the ALJ's decision denying benefits, Davis saw both a clinical social worker and a licensed professional counselor. He reported to the social worker that he had suicidal ideation for the past two years, but the counselor indicated he reported no suicidal thoughts. Both diagnosed him with depression. The records of the social worker, dated March 4, 2008, indicate that he had been taking Prozac. The records of the psychologist, dated April 7, 2008, indicate that he had been taking Wellbutrin. There is no evidence in the record regarding whether these medications had helped him.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the ALJ's decision, a court may not reverse it because substantial evidence exists in the record that could have supported a contrary outcome. *Id*. Nor may a court reverse the ALJ's decision because it would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether

existing evidence is substantial a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warbuton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §

404.1505(a); 20 C.F.R. § 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the Commissioner must decide if the claimant is engaging in any substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

When evaluating evidence of pain or other subjective complaints of the plaintiff, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id.* at 1322.

### **The ALJ's Findings**

The ALJ found that Davis was not disabled considering his age, education, work experience and residual functioning capacity. He issued the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since March 3, 2006, the alleged onset date. (20 C.F.R. §§ 404.1520(b), 404.1571 *et*

*seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status post myocardial infarction, cardiac ischemia, cardiomyopathy and toxic tobacco abuse. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record the ALJ found that the claimant had the residual functional capacity to perform a full range of sedentary work. Within less than 12 continuous months of his alleged onset date, the claimant could occasionally stand and walk for up to a total of 2 hours over an 8 hour work day, could sit for six of eight work hours, and could lift and carry up to 10 pounds.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 6, 1962 and was 43 years old which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1562 and 416.963).

8. The claimant has a high school education and communicates in English (20 CFR 404.1564 and 416.964).

9. The claimant's past relevant work did not provide him with skills that can be directly utilized in sedentary work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act from March 3, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## Discussion

As previously mentioned, when reviewing a denial of Social Security benefits, a court must determine whether there is substantial evidence on the record as a whole to support the ALJ's decision. 42 U.S.C. § 405(g). In this case, Davis claims that the ALJ's decision was not based on substantial evidence, and that the ALJ improperly gave little weight to the medical opinions of Davis's primary physician, Dr. Johnson. He argues that the ALJ ignored Davis's nonexertional limitations, improperly used the Medical-Vocational Guidelines (GRID) to determine Davis's Residual Functional Capacity (RFC), and failed to set forth and specify Davis's physical and mental limitations and how those limitations affect his RFC.

Davis claims that the ALJ ignored his nonexertional limitations of pain, fatigue, shortness of breath, environmental limitations, depression, and the side effects of his medication, Plavix. The Commissioner argues that the ALJ correctly considered Davis's claimed ailments including the side effects of his medications and either took them into consideration or properly discredited them.

An ALJ is "required to develop the record fully, and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). That being said the "failure to cite specific evidence does

not indicate such evidence was not considered." *Id.*

In this case the ALJ made specific references to Davis's chest pains, breathing issues, temperature limitations, possible depression, and medication side effects in determining whether Davis could return to past relevant work or could perform any other work in the current economy. After reviewing the record the ALJ determined that Davis's ailments would likely prevent most types of work, but would allow him to engage in sedentary work that is mostly indoors. In reaching this decision the ALJ relied on the Medical-Vocational guidelines (GRID). Davis claims that the this reliance on the GRID was improper because he has both exertional and nonexertional limitations. Davis argues that his pain, depression and issues with extreme temperatures are nonexertional impairments which should have lead the ALJ to call a vocational expert.

"Where the claimant has a nonexertional impairment, such as pain, the ALJ may not exclusively rely on the vocational grids to determine disability but must also consider the testimony of a vocational expert." *Haley v. Massanari,* 258 F.3d 742, 747-48 (8th Cir. 2001). While a vocational expert is generally required to testify regarding a claimant's nonexertional limitations, if the allegations of nonexertional limitations are "appropriately discredited for legally sufficient reasons, such as inconsistencies in the record evidence, the ALJ may employ the guidelines to direct a determination of not disabled." *Cline v. Sullivan*, 939 F.2d

560, 565 (8th Cir. 1991). Additionally, "the ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole." *Id.* at 748, citing *Gray v. Apfel*, 192 F.3d 799, 803 (8th Cir. 1999). Therefore, the question becomes whether the ALJ properly weighed the inconsistencies of Davis's claims and properly discredited Davis's testimony.

The Commissioner claims that the ALJ in this case had valid reasons to discredit Davis's claims of nonexertional impairments. For the ALJ to properly discredit subjective complaints and evidence of nonexertional impairments he must consider both the subjective and the objective factors set out by *Polaski*, including his subjective complaints, prior work record, observation of third parties and treating doctors, daily activities, pain, precipitating and aggravating factors, medications, and functional restrictions. *Id.* at 1322. While the ALJ must use these factors to determine the credibility of the claimant's complaints of nonexertional impairments, the ALJ does not need to discuss every *Polaski* factor. *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007). "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *Thomas v. Sullivan*, 928 F.2d 255 (8th Cir. 1991).

In this case the ALJ properly mentioned the *Polaski* factors and used those that were applicable in his decision to discredit Davis's complaints of pain and other nonexertional limitations. The ALJ determined that Davis's claims of pain

were contradicted by his daily activities. During his testimony Davis stated that he cooks, does the dishes and laundry, sweeps, vacuums, visits his wife and his friends, goes shopping and volunteers at a food pantry. Performing this wide range of activities contradicts his statements of extreme pain. Davis's "ability to perform these activities does not disprove disability as a matter of law, [but] 'inconsistencies between subjective complaints of pain and daily living patterns may . . . diminish credibility." *Casey*, 503 F.3d at 696, quoting *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996).

The ALJ found that duration and intensity of Davis's pain was less severe than claimed, noting that Davis has not been hospitalized since April 2006 and the medical record has ample evidence that shows improvements in his condition, such as an improved ejection fraction. Moreover, the medical records do not reveal any non-exertional limitation. Dr. Lewen's reports consistently refer to exertional pain only.

The ALJ also found Davis's statements to be suspect because of certain inconsistencies between his disability report and the testimony he gave in front of the ALJ. During the testimony Davis claimed he had only an 8th grade education, has trouble with reading comprehension, denied having a GED, and left a previous work placement because of a scheduling issue. However, the disability reports states that Davis does had a GED, reads and understands English, and left his

previous job because his wife was also working there.

The ALJ considered evidence from both of Davis's treating physicians, Dr. Johnson and Dr. Lewen, but credited Dr. Lewen's evidence over the opinions of Dr. Johnson. Generally, the opinions of treating physicians are given controlling weight if their opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). *See Ghant v. Bowen*, 930 F.2d 633, 639 (8th Cir. 1991); *See also Kelley v. Calahan,* 133 F.3d 585, 589 (8th Cir. 1998). "[T]he ALJ must defer to a treating physician's opinions about the nature and severity of a claimant's impairments, 'including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions." *Ellis v. Barnhart,* 392 F.3d 988, 955 (8th Cir. 2005) (citing 20 C.F.R. pt. 404(a)(2)).

The ALJ and the Commissioner concluded that Dr. Johnson's opinions were not entitled to controlling weight in this case because his opinions were inconsistent with the objective medical evidence and Dr. Lewen's treatment records. The ALJ credited Dr. Lewen's evidence because he was the treating cardiologist. This is a proper application of the law to the evidence. *See Hensley v. Barnhart*, 352 F.3d 353 (8th Cir. 2003) (opinions of treating specialist are entitled to more weight than opinions of treating primary care physician). There is

no mention in Dr. Lewen's notes that Davis could not work, and his records are entirely consistent with the ALJ's conclusions. The ALJ and the Commissioner point out several inconsistencies between Dr. Johnson's and Dr. Lewen's notes. For example Dr. Johnson diagnosed Davis with a NYHA class II-III while Dr. Johnson diagnosed Davis with a NYHA class IV, and Dr. Lewen believed that Davis was able to moderately exercise. The ALJ did not fail to properly consider the treating physicians' opinions.

The ALJ set forth Davis's impairments and made the determination that he would be unable to return to his past relevant work due to his physical limitations and Davis's description of the work he had done. After making this finding the ALJ went on to determine that even with Davis's ailments there was nothing in the record to suggest that Davis would be limited in the amount of time he can sit and perform sedentary work. The ALJ took into consideration the entire record, including the complaints of exertional and nonexertional impairments, and made a determination based on substantial evidence on the record that Davis's limitations would have little to no effect on his ability to engage in sedentary work.

Davis also argues that the ALJ improperly failed to consider his mental impairments. At the time of the hearing, the only evidence regarding depression were the physician's notes indicating that Davis was suffering some depression related to his heart attack. Dr. Lewen had recommended a psychiatric evaluation,

but Davis did not seek an evaluation until after the ALJ had denied benefits. Dr. Lewen also noted that he had provided Davis with a sample of an anti-depressant, but there is no record of whether Davis ever took the drug.

After the ALJ entered his opinion denying benefits, Davis was seen by two mental health professionals, and he submitted their records to the Appeals Council. When the claimant submits additional evidence after the ALJ's decision is rendered, and the "Appeals Council considers new evidence but denies review, we must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue,* 501 F.3d 987, 990 (8th Cir. 2007).

Even considering the new evidence, substantial evidence still supports the ALJ's decision denying benefits. Although Davis has been diagnosed with depression, he never sought treatment for depression until after the date of the ALJ's decision, and Davis has no record of any psychiatric hospitalizations or episodes whatsoever. There is not any evidence that suggests any severe mental health issues in Davis's life besides his recent diagnosis and GAF scores. Significantly, there was little to no discussion of any mental health concerns during the hearing. Davis's reports to the mental health professionals were inconsistent. To the first he reported suicidal ideation for the past two years, but he had never reported this to the treating physicians at the time, and he did not report this to the

second mental health professional did not indicate suicidal ideation. Davis' failure to seek treatment when recommended earlier detracts from the claim that his depression, when considered in combination with his heart condition, limits his ability to work.

Based on my consideration of the record as a whole, including the post-hearing mental health records, I conclude that the Commissioner's decision denying benefits is based on substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed. A separate judgment in accordance with this Memorandum and Order is entered this same date.

CATHERINE D. PERRY  
UNITED STATES DISTRICT JUDGE

Dated this 13th day of September, 2010.